UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SERGEI KAPIRULJA,                          :

                 Movant,          :    REPORT AND
                              RECOMMENDATION
   -against-                                :
                              09 Civ. 4088 (RO)(HBP)
UNITED STATES OF AMERICA,          :    05 Cr. 1246 (RO)

               Respondent.       :

----------------------------------X


       PITMAN, United States Magistrate Judge:


       TO THE HONORABLE RICHARD OWEN, United States District

Judge,


I.  Introduction


       Sergei Kapirulja seeks, by his pro se motion pursuant

to 28 U.S.C. § 2255, an Order vacating or modifying a judgment of

conviction imposed on June 29, 2007, after a jury trial, by the

United States District Court for the Southern District of New

York (Owen, D.J.), for one count of conspiracy to commit mail

fraud and health care fraud, in violation of Title 18, United

States Code, Section 1349.  By that judgment, Kapirulja was

sentenced to a term of 51 months' imprisonment, a three-year term

of supervised release and a special assessment of $100.  The

judgment also required that Kapirulja pay restitution in the

amount of $230,380.13.  Kapirulja is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the motion be denied.

II.  Facts

Kapirulja's conviction arose out of his participation in a conspiracy to stage automobile accidents and submit claims for medical treatments and assert personal injury claims and thereby defraud insurance companies.  The conspirators' modus operandi was to drive their car in front of an innocent motorist and stop their car abruptly, causing the innocent motorist to strike the rear of the conspirators' vehicle.  The conspirators, including Kapirulja, would then seek medical treatment for their alleged injuries and sue the innocent motorist, asserting false claims for personal injuries.  The conspirators benefitted through their receipt of kickbacks from medical facilities that would bill the innocent motorists' insurance companies for treatments allegedly rendered for the fictitious injuries and from the settlements of the personal injury actions.

A.   Trial Court
     Proceedings

Information 05 Cr. 1246 alleged that from in or about December 1999 up to and including May 2003, Kapirulja and others known and unknown conspired to violate 18 U.S.C. §§ 1341 (mail fraud) and 1347 (health care fraud).  The information alleged two overt acts in furtherance of the conspiracy:  (1) that in December 1999, Kapirulja participated in a staged accident in Brooklyn, New York, and (2) that in November 2001, a law firm in Manhattan sent matter by mail concerning a settlement paid to Kapirulja in connection with the December 1999 staged accident.

A substantial portion of the evidence against Kapirulja came from Aleksey Makrov,[1] one of Kapirulja's conspirators who had pleaded guilty to at least one felony and was testifying pursuant to a cooperation agreement (Tr.[2] 115-16).  Makrov testified that the conspirators perpetrated their scheme in the following manner.  An individual would "organize" the accident by

---

[1]For reasons that are not disclosed in the record, the names of two of the government witnesses -- Aleksey Makrov and Boris Fedosov -- are spelled differently in the government's appellate brief and in the Court of Appeals' decision affirming Kapirulja's conviction than they are in the trial transcript.  I use the spellings that appear in the trial transcript.

[2]"Tr." refers to the transcript of Kapirulja's trial.  "GX" refers to an exhibit offered by the government at trial.  "PSR" refers to the Pre-Sentence Report.

finding a vehicle to use, recruiting passengers and a "crash driver" and finding the medical office that would be used to render treatment to the participants in the crash (Tr. 89-90). The crash driver, usually Makrov, would look for an otherwise innocent driver who tended to follow vehicles too closely.  The crash driver would then pull in front of the innocent driver and stop the crash car abruptly, causing the innocent driver to strike the rear of the conspirators' vehicle (Tr. 89-91). Because the police generally asked for identification only from the driver of a vehicle involved in an accident and not the passengers, Makrov and a passenger would surreptitiously switch seats after the accident, thereby permitting Makrov to give a fictitious name and avoid identification as someone who was frequently the "victim" of rear-end collisions (Tr. 91-92).

Makrov testified that the police would routinely be called to the accident scene and he would provide a false name as instructed by the accident's organizer; Makrov understood that the name he would use would typically be the name of an individual who was not involved in the accident but who, nevertheless, would seek treatment at a medical facility selected by the accident's organizer (Tr. 91, 96).  After getting a copy of the police report, the accident's organizer would finalize arrangements with the cooperating medical facility and receive a kick-

back from the medical facility in exchange for arranging for the facility's treatment of the victims (Tr. 90, 95).

As noted above, in addition to receiving kickbacks from medical facilities, the conspirators would also file actions against the driver of the other vehicles involved in the accidents.  The innocent drivers' insurers would typically settle these actions, not knowing that they had been staged (Tr. 32-35, 304-20).

In addition to Makrov's testimony, the government also offered the testimony of Boris Fedosov, the organizer of one of the accidents the government proved at trial (Tr. 333), insurance files that corroborated Makrov and Fedosov's testimony concerning how the scam worked and two covertly-made tape recordings of a conversation between Makrov and Kapirulja in which the latter made several inculpatory statements.  The government proved Kapirulja's guilt through evidence of his participation in four staged accidents.

Makrov testified that he first participated in a staged accident with Kapirulja in 1999 that had been organized by an individual named Berman (Tr. 118-19).  Makrov drove the car at the time of the crash; he did not remember the date or location of the accident (Tr. 119-20).  Immediately after the accident,

Makrov and Kapirulja switched seats to make it appear that
Kapirulja was driving at the time of the accident (Tr. 120).

Although Makrov did not remember many of the details of
this accident, insurance records offered by the government
established that Kapirulja had been involved in an accident on
July 28, 1999 in which Kapirulja's car was rear-ended by another
vehicle on the Long Island Expressway in Queens (GX 5B).
Kapirulja and the other individuals in his car sued the other
driver and collected $42,500 in a settlement (GX 5A).  A medical
facility also billed an insurance company more than $50,000 for
medical treatments allegedly provided to Kapirulja and the other
passengers in his car (GX 5; PSR ¶ 13).

The second staged accident identified by Makrov also
occurred in 1999 when Kapirulja invited Makrov to participate in
a staged accident (Tr. 121).  The car used in this accident was a
Ford Taurus which had previously been damaged in an accident
involving Kapirulja's roommate, an individual identified only as
"Ivan" (Tr. 122).  Accordingly, Kapirulja instructed Makrov to
stage the accident in a way that would make it appear that the
accident Makrov would be staging was the cause of all the car's
damage (Tr. 122).  Pursuant to his agreement with Kapirulja,
Makrov caused a rear end collision on the FDR Drive in Manhattan
by pulling in front of another vehicle and turning his wheel

sharply which caused the other driver to impact the preciously damaged left-side passenger door (Tr. 123).  At the time of the accident, an individual Makrov believed to be Kapirulja's room-mate, Ivan, was the front seat passenger, and immediately after the accident, Makrov and Ivan switched places to make it appear that Ivan had been driving (Tr. 123).  Kapirulja and another person were also in the car at the time of the accident (Tr. 123).  No insurance records were introduced concerning this accident.

Makrov testified that he participated in a third staged accident with Kapirulja involving a red Honda (Tr. 125-26).  The accident took place on the Brooklyn-Queens Expressway in the Prospect Park section of Brooklyn (Tr. 125).  Makrov positioned the Honda in front of another vehicle and applied the brakes, causing the other vehicle to strike the Honda in the rear (Tr. 126).  After the accident, Makrov switched places with Kapirulja, who had been the front seat passenger (Tr. 127-28).  Boris Fedosov organized this accident and paid Makrov $1,000 to partic-ipate in this accident; Fedosov's mother was a passenger in the Honda's rear seat at the time of the accident (Tr. 126-28).

7

Fedosov also testified concerning this accident.[3]  He confirmed that he had arranged the accident involving the Honda and had arranged for Makrov and Kapirulja's participation (Tr. 333-34).  He also testified that he had placed both of his parents in the car (Tr. 333-35).  Fedosov testified that he made arrangements with a clinic to treat his parents, Kapirulja and another individual who had not been in the Honda; although this other individual was not in the Honda, Makrov identified himself as this individual when the police arrived so this other individual's name appeared in the police report (Tr. 335-36).  The clinic paid Fedosov $2,000 for arranging this accident, and he paid $1,000 to Kapirulja (Tr. 334, 337).

The government also offered insurance company documents to corroborate Makrov and Fedosov's testimony concerning this accident (GX 7).  In addition to corroborating the time and place of the accident and the manner in which the accident occurred, the documentary evidence established that a medical clinic treatment received more than $50,000 for treatments related to the accident and that a lawsuit against the driver of the vehicle that struck the Honda resulted in a settlement of approximately $20,000 (GX 7, 7A).

---

[3]Like Makrov, Fedosov had also pleaded guilty to one or more felonies and was testifying pursuant to an agreement with the government (Tr. 328-29).

The government proved the fourth accident exclusively through documentary evidence.  The fourth accident occurred on November 1, 2002 when a Mitsubishi in which Kapirulja was a passenger was struck in the rear on Dorchester Street in Brooklyn (GX 6C).  Kapirulja and the other occupants of the Mitsubishi claimed numerous injuries and received treatments at several medical clinics; the clinics received payments in excess of $20,000 from the Mitsubishi driver's no fault carrier for these treatments (GX 6; Tr. 381-82).  Although additional bills were submitted to the no-fault carrier, payment was refused after an engineering company retained by the no fault carrier determined that the force of the accident was not sufficient to cause the claimed injuries (GX 6).

In addition to the testimonial and documentary evidence described above, the government also offered two tape recordings of conversations between Makrov and Kapirulja that took place in January and May 2005 (GX 1, 1T, 2, 2T).  The two discussed the scheme, the fact that Berman had introduced Kapirulja to Makrov and Kapirulja acknowledged that he had been treated at a clinic associated with Berman (Tr. 167).  Kapirulja also acknowledged that he had made "a couple of bucks" as a result of the second accident (Tr. 167-70).  Kapirulja also admitted in one of the

tape-recorded conversations that he had participated in the accident involving the red Honda (Tr. 159).

The defense did not present a case.

B. Kapirulja's
Appeal

Represented by new counsel, Kapirulja appealed his conviction to the United States Court of Appeals for the Second Circuit.  His brief asserted six claims:  (1) the government failed to prove that venue was proper; (2) the admission of evidence regarding the 2002 accident was prejudicial error because there was no evidence linking it to the charged conspiracy and the evidence was not admissible as similar act evidence; (3) the Trial Court's charge that the jury could consider the 2002 accident as either evidence of the conspiracy or as similar act evidence was erroneous; (4) the Trial Court erroneously failed to instruct the jury that it should find Kapirulja not guilty if the government failed to prove the conspiracy charged in the information; (5) the Trial Court's repeated interruptions of the cross-examinations of the cooperating witnesses deprived Kapirulja of a fair trial, and (6) in calculating the applicable offense level, the Trial Court erred by including the amounts paid by insurance companies in connection with the 2002 accident and by finding that Kapirulja was a leader or organizer.

10

The Court of Appeals affirmed Kapirulja's conviction and sentencing on June 19, 2008.  <u>United States v. Kapirulja</u>, 314 F. App'x 337 (2d Cir. 2008).  The Court first found that venue was established by evidence that a law firm retained by Kapirulja had mailed claims-related material in Manhattan and by evidence concerning the accident on the FDR Drive.  314 F. App'x at 339. Second, the Court found that evidence relating to the 2002 crash was admissible as either proof of the conspiracy or similar act evidence and that the Trial Court's charge that the jury could consider the evidence concerning the 2002 accident as either proof of the conspiracy or absence of mistake or accident was not erroneous.  314 F. App'x at 339-40.  Next, the Court found that the Trial Court's multiple-conspiracy charge was correct.

> "The gist of the crime of conspiracy . . . is the agreement . . . to commit one or more unlawful acts, and multiple agreements to commit separate crimes constitute multiple conspiracies."  <u>United States v. Jones</u>, 482 F.3d 60, 72 (2d Cir. 2006) (internal citation and quotation marks omitted).  The district court instructed the jury that the government was required to prove beyond a reasonable doubt "that the defendant was a member of the conspiracy charged" and that the jury should find Kapirulja "not guilty of this conspiracy charge, even if you find he was a member of some other conspiracy.  Proof that defendant was a member of some other conspiracy is not enough to convict."  Although we have approved more detailed multiple conspiracies charges, <u>see</u>, <u>e.g.</u>, <u>Jones</u>, 482 F.3d at 73 (jury charge instructed jury about significance of facts such as change in personnel and location of overt acts), this charge sufficiently "stress[ed] . . . that there must be [a] finding of the single conspiracy charged and individual knowing participation by [the] individual in

11

> it."  <u>United States v. Berger</u>, 224 F.3d 107, 114 (2d
> Cir. 2000) (internal quotation marks omitted).  The
> jury charge was sufficient because it emphasized the
> government's burden to prove that Kapirulja was a
> member of the conspiracy charged, rather than a differ-
> ent conspiracy.

314 F. App'x at 340-41.

The Court found that the Trial Court's limitations on defense counsel's cross examination of the cooperating witnesses were proper exercises of discretion.  314 F. App'x at 341. Finally, the Court of Appeals found that the Trial Court's factual findings underlying its offense level calculation were reviewable only for clear error and that they were not clearly erroneous.  314 F. App'x at 341-42.

    C.  The Pending
        <u>Motion</u>

Kapirulja raises two claims in his pending motion. Although his first claim is not entirely clear, he appears to be claiming that the evidence at trial established multiple conspir-acies and not the single conspiracy charged in the information.[4]

--------

[4]Kapirulja states his first claim as follows:

> Movant was charged in an information containing one
> count of conspiracy to commit mail fraud and health
> care fraud.  At trial, Movant was unduly prejudiced by
> being prosecuted on multiple counts of conspiracy
> without being indicted on the additional charges,
> without waiving indictment and without amendment of his

(continued...)

12

In the direct and reply memoranda, he appears to alter the claim
slightly and to argue that he was unfairly surprised by the
government's evidence of accidents that were not charged in the
information as overt acts (Movant's Memorandum of Law in Support
of Defendant's Motion to Vacate, Set Aside or Correct Sentence
under 28 U.S.C. § 2255, (Docket Item 2) ("Movant's Memo of Law"),
at 15; Reply Memorandum of Defendant Sergei Kapirulja in Support
of Defendant's Motion to Vacate, Set Aside, or Correct Sentence
Pursuant to 28 U.S.C. § 2255, (Docket Item 7) ("Movant's Reply
Memo"), at 4).  Kapirulja's second claim asserts that his trial
counsel was ineffective.  Specifically, Kapirulja claims that his
trial counsel

> failed to 1) prepare a defense strategy; 2) object to
> the prosecution of charges beyond the scope of the
> original charging instrument; 3) present any defense,
> call defense witnesses or otherwise introduce evidence
> to rebut the charges; 4) challenge the conclusions of
> the government's exhibits; 5) effectively object to the
> admission of inadmissible hearsay expert witness evi-
> dence; and 6) insist that Movant be provided with an
> interpreter at the time he was asked to waive indict-
> ment.

(2255 Motion at 6).

---

[4](...continued)
        additional information.

(Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct
Sentence by a Person in Federal Custody, dated March 20, 2009,
(Docket Item 1) ("2255 Motion") at 5).

In support of his contention that he had a viable defense, Kapirulja has submitted three affidavits.  The first is from Kapirulja himself and claims his defense counsel never discussed a defense strategy or reviewed documentary evidence with him and failed either to discuss the presentence report with Kapirulja or to discuss the possibility of filing objections to the presentence report.

Kapirulja has also submitted an affidavit from Nadia Malanova, who claims to have been a rear-seat passenger of the Mitsubishi that was involved in the November 2002 accident on Dorchester Road in Brooklyn.  In substance, Malanova claims that the accident was not staged, that Kapirulja was a passenger in the front seat at the time of the accident and that Kapirulja and the driver -- Dimitriy Pupko -- did not switch seats immediately after the accident.

Kapirulja has also submitted an affidavit from Ivan Kosherov who claims to have shared an apartment with Kapirulja from May 1999 through January 2000.  Kosherov states that he knew both Kapirulja and Makrov, that he was never involved in an automobile accident involving a vehicle in which Kapirulja was also a passenger, that he never participated in a staged accident and never went to a medical center with Makrov or Kapirulja for

14

any reason.  He also states that so far as he knows, Kapirulja never participated in a staged accident.

Finally, Kapirulja has also submitted an unsworn letter from an individual named Victor Markin who states that he was Kapirulja's roommate in 1999 and that although Makrov attempted to induce Markin and Kapirulja to get involved in different kinds of unspecified illegal activity, they never did so.  Markin claims that Makrov's testimony to the contrary is false.

III.  Analysis

   A.  Kapirulja's Claim Concerning the
       the Sufficiency of the Evidence
       to Prove the Charged Conspiracy
       Is Procedurally Barred

"A § 2255 petition may not be used as a substitute for direct appeal."  Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993), citing United States v. Frady, 456 U.S. 152, 165 (1982). Accordingly, where, as here, a federal prisoner attempts to use Section 2255 to assert a claim that was not raised on direct appeal but which could have been so raised, the claim will be procedurally barred unless the prisoner shows cause for failing to raise the claims on direct appeal and prejudice therefrom.

> A party who fails to raise an issue on direct
> appeal and subsequently endeavors to litigate the issue
> via a § 2255 petition must "show that there was cause
> for failing to raise the issue, and prejudice resulting

> therefrom." <u>Douglas v. United States</u>, 13 F.3d 43, 46
> (2d Cir. 1993) (citing <u>Campino v. United States</u>, 968
> F.2d 187, 190 (2d Cir. 1992)). . . . "The Supreme Court
> has stated that '"cause" . . . must be something <u>exter-
> nal</u> to the petitioner, something that cannot be fairly
> attributed to him.'" <u>Marone v. United States</u>, 10 F.3d
> 65, 67 (2d Cir. 1993) (quoting <u>Coleman v. Thompson</u>, 501
> U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640
> (1991)) (emphasis in <u>Coleman</u>).

<u>United States v. Pipitone</u>, 67 F.3d 34, 38 (2d Cir. 1995); <u>accord</u>

<u>Mui v. United States</u>, Docket No. 07-4963-pr, 2010 WL 2977323 at

\*3 (2d Cir. July 30, 2010) ("A second rule that applies in the

Section 2255 context prevents claims that could have been brought

on direct appeal from being raised on collateral review absent

cause and prejudice."); <u>Campino v. United States</u>, 968 F.2d 187,

190 (2d Cir. 1992) ("[F]ailure to raise a claim on direct appeal

is itself a default of normal appellate procedure, which a

defendant can overcome only by showing cause and prejudice."),

<u>cert</u>. <u>denied</u>, 130 S.Ct. 1090 (2010).

In addition, a Section 2255 motion cannot be used as a vehicle to

relitigate claims that were actually raised and decided on direct

appeal. <u>Reese v. United States</u>, 329 F. App'x 324, 326 (2d Cir.

2009), <u>cert</u>. <u>denied</u>, 130 S.Ct. 1537 (2010), ; <u>United States v.

Pitcher</u>, 559 F.3d 120, 123 (2d Cir. 2009) <u>United States v. Sanin</u>,

252 F.3d 79, 83 (2d Cir. 2001); <u>see also</u> <u>United States v.

Natelli</u>, 553 F.2d 5, 7 (2d Cir. 1977) (<u>per curiam</u>).

16

Although Kapirulja's first claim is not entirely clear,
he appears to be arguing that (1) either the government proved
multiple conspiracies and not the single conspiracy charged in
the information or that the evidence was insufficient to prove
the conspiracy charged in the information and (2) that he was
prejudiced by the admission of evidence concerning wrongdoing
outside of the conspiracy charged in the information.[5]   In any
event, either claim is procedurally barred because each could
have been raised on Kapirulja's direct appeal.  United States v.
Norton, 539 F.2d 1194, 1195 (8th Cir. 1976) (per curiam) (suffi-
ciency of the evidence); Bram v. United States, 302 F.2d 58, 59
(8th Cir. 1962) (per curiam) (variance); Dansby v. United States,
291 F. Supp. 790, 793 (S.D.N.Y. 1968) (MacMahon, D.J.) (suffi-
ciency of the evidence).

---

[5]In his memorandum of law in support of his motion,
Kapirulja elaborates on his claim as follows:

> Part of the Movant's claim in this petition, is
> that the three additional accidents were patently not
> related as part of a single conspiracy.  As such, since
> the Government had never indicted the Movant on these
> additional charges, or otherwise substituted or amended
> the Movant's One Count Criminal Information, the Movant
> claims the prosecution of these charges should never
> have been permitted at all.

(Movant's Memo of Law at 4).

Although Kapirulja could, in theory, overcome the procedural bar if he were to show either cause and prejudice or that a failure to consider the merits of the claim would result in a fundamental miscarriage of justice, Walden v. United States, 63 F. App'x 568, 569 (2d Cir. 2003); Roccisano v. Menifee, 293 F.3d 51, 61 (2d Cir. 2002), he has not attempted to make either showing.  To the contrary, his reply papers do not even address the issue of procedural bar.[6]

Because any reasonable construction of petitioner's first claim results in a claim that either could have been or was raised on direct appeal, his first claim is procedurally barred.

---

[6]In movant's motion he states that his first claim was not raised on direct appeal because "[a]ppellate counsel failed to raise the possibility of presenting this issue on direct appeal" (2255 Motion at 5).  Assuming the truth of this statement, it does not constitute cause sufficient to excuse Kapirulja's failure to raise his first claim on direct appeal.  In order for a failure on the part of appellate counsel to constitute cause sufficient to excuse a procedural bar, a 2255 movant must demonstrate that appellate counsel's failure to assert the claim was itself ineffective assistance under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Xiang v. United States, 09 Civ. 7579 (AKH), 2010 WL 3155052 at *4 (S.D.N.Y. Aug. 6, 2010) (Hellerstein, D.J.); Thomas v. Zon, 04-CV-0471 (VEB), 2009 WL 605231 at *8 (W.D.N.Y. Mar. 6, 2009); United States v. Reeves, 02 Civ. 9309 (LAP), 96 Crim. 325 (LAP), 2005 WL 3288012 at *6 (S.D.N.Y. Dec. 2, 2005) (Preska, D.J.); Kalani v. United States, 02 Civ. 8663 (SAS), 2002 WL 31453094 at *4 (S.D.N.Y. Oct. 31, 2002) (Scheindlin, D.J.).  Because Kapirulja has not demonstrated, or even claimed, that his appellate counsel was constitutionally ineffective for not raising Kapirulja's first claim on direct appeal, counsel's conduct cannot constitute cause sufficient to explain the procedural bar.

B.   Ineffective Assistance
     of Trial Counsel

In his second claim, Kapirulja claims that his trial counsel was ineffective.[7]

In order to prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must meet the now-familiar, two-part test set forth in Strickland v. Washington, 466 U.S. 668, 686-87 (1984):

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. . . .
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

_____

[7]A federal prisoner's claim that his trial counsel was ineffective is not procedurally barred based on a failure to raise the claim on direct appeal.  Massaro v. United States, 538 U.S. 500 (2003).

Accord Bierenbaum v. Graham, 607 F.3d 36, 50-51 (2d Cir. 2010);
Sylvester v. United States, 369 F. App'x 216, 217 (2d Cir. 2010);
Puglisi v. United States, 586 F.3d 209, 215 (2d Cir. 2009); Brown
v. Greene, 577 F.3d 107, 110 (2d Cir. 2009), cert. denied, 130
S.Ct. 1881 (2010); Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir.
2009); Torres v. Donnelly, 554 F.3d 322, 325 (2d Cir. 2009);
Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008).

        In determining whether counsel's performance was
objectively deficient, courts "must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance; that is, the [movant] must overcome the
presumption that, under the circumstances, the challenged action
might be considered sound trial strategy."  Strickland v.
Washington, supra, 466 U.S. at 689 (internal quotations omitted);
accord Brown v. Greene, supra, 577 F.3d at 110; Parisi v. United
States, 529 F.3d 134, 141 (2d Cir. 2008).

        In order to find prejudice, the "court must determine
whether, absent counsel's deficient performance, there is a
reasonable probability that the outcome of the proceeding would
have been different."  McKee v. United States, 167 F.3d 103, 106
(2d Cir. 1999), quoting Mayo v. Henderson, 13 F.3d 528, 534 (2d
Cir. 1994) (internal quotation marks omitted); accord Rosario v.
Ercole, 601 F.3d 118, 123 (2d Cir. 2010), rehearing en banc

denied, 2010 WL 3123267 (2d Cir. Aug. 10, 2010).  The court may
make this determination "with the benefit of hindsight,"
Hemstreet v. Greiner, 491 F.3d 84, 91 (2d Cir. 2007), quoting
Mayo v. Henderson, supra, 13 F.3d at 534, and "[t]he fact that
precisely the same claim was successful on an appeal pursued by a
similarly situated litigant is a strong indication that the
failure of the petitioner's counsel to press that claim was
prejudicial," McKee v. United States, supra, 167 F.3d at 107.

       A 2255 movant's failure to satisfy either prong of the
Strickland test requires that the challenge to the conviction be
rejected, and if a court finds that one of the two prongs is not
satisfied, it need not consider the other.  See Strickland v.
Washington, supra, 466 U.S. at 697; Palacios v. Burge, 589 F.3d
556, 566 (2d Cir. 2009).

       Kapirulja's first and third specifications of ineffec-
tive assistance are essentially redundant and allege that his
trial counsel failed to "1) prepare a defense strategy [and] 3)
present any defense, call defense witnesses or otherwise intro-
duce evidence to rebut the charges . . ." (2255 Motion at 6).  In
his memorandum of law in support of his motion, Kapirulja elabo-
rates on these specification and claims that his trial counsel
never discussed a defense strategy with Kapirulja and didn't
discuss the need to call defense witnesses (Movant's Memo of Law

at 17-18).  As noted above, Kapirulja has submitted affidavits
from himself, Nadia Malanova and Ivan Kosherov in support of this
claim.  The record, however, demonstrates that this claim lacks
merit.

With respect to Malanova and Kosherov, Kapirulja never
asserts that he disclosed the existence of these potential
witnesses to his defense counsel.  Although Kapirulja suggests in
reply that he had no idea that the information that these wit-
nesses might have would be relevant because his counsel did not
discuss the case with him and he did not know that evidence of
accidents other than the accident specified in the information
would be offered (Reply Memo at 10), the record demonstrates that
this statement must be false.  The principal witnesses against
Kapirulja were Makrov and Fedosov; the balance of the witnesses
were document custodians and an FBI Special Agent who testified
to Kapirulja's post-arrest statements.  In both his opening
statement and his cross-examination of Makrov and Fedosov,
Kapirulsa's counsel raised matters which were not elicited on
direct examination and which could only have originated with
Kapirulja (e.g. Tr. 18 (Kapirulja was drunk when an undercover
recording was made), Tr. 19 (the relationship between Kapirulja
and Fedosov), Tr. 213 (counsel researched Makrov before trial),
Tr. 224 (counsel prepared a subpoena for Makrov seeking documents

regarding his involvement in other accidents), Tr. 247, 249, 252 (questions concerning a conversations between Makrov and Kapirulja), Tr. 348-49 (questions concerning Fedosov's testimony in another trial against Oszumlar), Tr. 361-62 (questions concerning a conversation between Fedosov and Makrov), and Tr. 363-64 (questions concerning the medical condition of Fedosov's parents). Unless counsel had discussed Makrov and Fedosov with Kapirulja prior to trial, counsel would have had no knowledge of these subjects.

Kapirulja is not an uneducated or unsophisticated individual. The Pre-Sentence Report indicates that he has a bachelor's degree in biochemistry and was one semester short of obtaining an unspecified degree in genetics (Pre-Sentence Report at 9). He also attended Globe Institute of Technology in Manhattan and obtained an associates degree in computer programming (Pre-Sentence Report at 9). Given his educational background and the fact that he must have discussed Makrov and Fedosov with counsel prior to trial, his suggestion now that he had no idea that the testimony Malanova and Kosherov would be relevant is absurd. An attorney is not ineffective for failing to ask a sophisticated, competent defendant about witnesses known only to the defendant and whose testimony is obviously relevant.

Because Kapirulja offers no evidence that he disclosed the existence of Malanova or Kosherov to his attorney, his attorney's conduct did not depart from "prevailing professional norms." Strickland v. Washington, supra, 466 U.S. at 688.[8]

          Kapirulja next claims that his counsel was ineffective for failing to "object to the prosecution of charges beyond the scope of the original charging instrument . . ." (2255 Motion at 6).  Kapirulja is again attempting to revive his argument that the government proved multiple conspiracies or a conspiracy other than the one alleged in the information.  Given the Court of Appeals finding that the Trial Court did not err in admitting evidence of accidents beyond the specific accident alleged in the information, this argument fails.  Moreover, as Judge Owen noted in a pretrial conference conducted immediately before the jury was selected, the information charged Kapirulja with defrauding health care "programs" (Transcript of Proceedings conducted on July 24, 2006 at 21 (emphasis added)).  Thus, the charge against Kapirulja always involved more than one accident.

_____

          [8]As demonstrated in the text, Kapirulja's claim that his counsel did not discuss the case with him is contradicted by the record.  Accordingly, there is no need to conduct an evidentiary hearing.  See Puglisi v. United States, supra, 586 F.3d at 214 ("[A] district court need not assume the credibility of factual assertions [in a 2255 motion], as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding.")

Kapirulja next claims that his counsel was ineffective for not "challeng[ing] the conclusions of the government's exhibits" (2255 Motion at 6). Kapirulja does not identify the exhibits to which this claim refers nor does he explain how the conclusions were incorrect or what alternative conclusions could reasonably be drawn from the documents. In his memorandum of law, Kapirulja cites government exhibits 5, 6 and 7, which were various insurance records, and claims that his counsel did not discuss these exhibits with him (Movant's Memo of Law at 18). He does not, however, explain how a discussion of these documents with his counsel would have probably altered the outcome of the trial. The documents were offered primarily to corroborate the testimony of Makrov and Fedosov that certain accidents occurred at the time, place and in the manner they described, i.e., rear-end collisions. Because Kapirulja has never claimed, and does not claim here, that the accidents never occurred, it is difficult to see how counsel's alleged failure to discuss these documents with Kapirulja had any effect on the outcome of the trial.

Kapirulja's next specification of ineffective assistance is that his counsel failed to "effectively object to the admission of inadmissible hearsay expert witness evidence" (2255

Motion at 6).  Oddly, the government ignores this argument and offers no response to it.

Kapirulja's argument relates to government exhibit 6B, which was a part of the New York Central Mutual Insurance Company file relating to the November 2002 accident that occurred in Brooklyn and involved a Mitsubishi in which Kapirulja and others were passengers.  Specifically, exhibit 6B is a report prepared by a consulting company retained by the insurance company in which the authors conclude that the forces generated by the accident were not sufficient to cause the injuries claimed by Kapirulja and one of the passengers.  Although defense counsel argued that evidence concerning the accident itself was irrelevant because no connection to the alleged conspiracy was demonstrated (Tr. 373-74) and that the document was not admissible as a business record (Transcript of Proceedings conducted on July 24, 2006 at 24-31), he did not make the Daubert[9] objection that Kapirulja appears to suggest should have been made.

Upon reviewing the transcript of the trial, I conclude that there is no reasonable probability that the admission of exhibit 6B affected the outcome of the trial, and, therefore, counsel's failure to make a Daubert objection to exhibit 6B was

---

[9]See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

not prejudicial to Kapirulja.  The only portion of exhibit 6B
that has been provided to me are pages 2460 and 2462 annexed to
Kapirulja's motion.  In pertinent part, these pages merely state
a conclusion that the forces generated by the November 2002
accident could not have caused the injuries claimed.  Neither the
consultant's methodology nor its reliability is discussed at all.
Accordingly, I shall assume for purposes of argument that a
Daubert objection would have been successful.[10]  Nevertheless,
the other evidence in the record established that plaintiff was
involved in four similar accidents over a three and one-half year
period that all occurred in the same manner, i.e. a collision in
which the vehicle occupied by Kapirulja was struck in the rear.
There was testimony from Makrov and Fedosov establishing that
three of the four accidents were deliberately caused pursuant to

---

[10]The fact that the hearsay objection to exhibit 6B was
overruled does not imply that a Daubert objection would have been
unsuccessful.  See United States v. Sutton, 337 F.3d 792, 797-98
(7th Cir. 2003) (analyzing hearsay and Daubert objections to
public document independently); Sommerfield v. City of Chicago,
254 F.R.D. 317, 320 (N.D. Ill. 2008) (hearsay and Daubert
objections are independent of each other); In re Welding Fume
Prod. Liab. Litig., 534 F. Supp. 2d 761, 764-66 (N.D. Ohio 2008)
(analyzing hearsay and Daubert objections to purported learned
treatise independently); Mayes v. City of Hammond, No.
2:03-CV-379-PRC, 2006 WL 1765407 at *7 (N.D. Ind. June 21, 2006)
(conclusion that evidence falls within Fed.R.Evid. 803(8)(c)'s
exception to the prohibition against hearsay does not abrogate
the court's gatekeeper role under Daubert).  An inadequately
supported expert opinion that is memorialized as a business
record still gives rise to all the same concerns cited by the
Supreme Court in Daubert.

an agreement.  In addition, the government introduced two tape-recorded conversations in which Kapirulja admitted his involvement in several of the accidents.  In light of this other evidence, I find that the admission of government exhibit 6B did not affect the outcome of the trial and that there is no reasonable probability that the outcome of the trial would have been different had exhibit 6B been excluded.  Deliberately causing a collision pursuant to an agreement for the purposes of financial gain is a conspiracy to defraud whether or not the participants actually suffer an injury.  Because I find that there is no reasonable probability that the exclusion of exhibit 6B would have yielded a different verdict, I conclude that plaintiff was not prejudiced by its admission.

Finally, Kapirulja claims that his counsel was ineffective by not requesting an interpreter at the time Kapirulja waived indictment.  In his memorandum of law, Kapirulja expands on this specification and claims that counsel was ineffective for letting an Assistant United States Attorney ("AUSA") speak directly to Kapirulja immediately after the waiver-of-indictment proceeding and that in that conversation the AUSA promised Kapirulja an eight-month sentence if he pleaded guilty and a 16-month sentence if he went to trial and was convicted (Movant's Memo. at 14-15).

Kapirulja's argument here is internally inconsistent. If Kapirulja lacked sufficient understanding of English to understand the waiver-of-indictment proceeding, it is difficult to understand how his recollection of an alleged conversation with an AUSA immediately thereafter can be trusted.  In any event, even if I assume Kapirulja did not understand the waiver-of-indictment proceeding, he suffered no prejudice.  Because the government had sufficient admissible evidence to prove Kapirulja's guilt at trial beyond a reasonable doubt, it necessarily had sufficient evidence to establish probable cause and secure an indictment.  With respect to the alleged conversation with and plea offer from the AUSA, Kapirulja again offers no evidence of prejudice.  The government did not offer any evidence of any un-counseled statements Kapirulja may have made in the course of this conversation.  As to the alleged plea offer,[11] Kapirulja continues to maintain his innocence and does not claim that he would have accepted the alleged offer of an eight-month

---

[11]It has long been the practice of the United States Attorney's Office in this district to decline to enter into plea agreements that guarantee a specific sentence.  Although the government routinely stipulates in plea agreements that a defined sentencing range is appropriate, such agreements expressly note that the government's stipulation does not bind the judge who will sentence the defendant and that the sentencing judge retains the discretion to impose any sentence that is legal.  In light of this practice, it is extremely unlikely that Kapirulja's description of the plea offer is accurate.

sentence had he known his true exposure.  Thus, even if the alleged offer was made and even if Kapirulja did not receive proper counsel concerning the plea offer, he suffered no preju- dice.

Thus, since Kapirulja has not met both prongs of the Strickland test with respect to any of his specifications of ineffective assistance of counsel, I conclude that this claim also fails.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect- fully recommend that Kapirulja's motion be denied in all re- spects.

In addition, because Kapirulja has not made a substan- tial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.  28 U.S.C. § 2253.  To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (internal quotation marks omitted); see also Love v. McCray, 413

30

F.3d 192, 195 (2d Cir. 2005) (<u>per</u> <u>curiam</u>).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that Kapirulja's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

V.   <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Richard Owen, United States District Judge, 500 Pearl Street, Room 2240, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Owen.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.

Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male

Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        September 14, 2010

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Mr. Sergei Kapirulja
No. A45631633
Columbia County Prison
721 Iron Street
Bloomsburg, Pennsylvania  17815

Arlo Devlin-Brown, Esq.
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York  10007